We're familiar with your cases. And I know you're familiar with our lighting system, and you now have a readout on your side of the lectern that tells you how much time you have left. When you see the yellow light, begin to bring your argument to a close, and then when the red light comes on, finish your sentence and stop. And I remind you that rebuttal is for rebuttal only. We have a little problem. Our lawyer didn't show up in the third case, so we'll take a break after the third case. But we've made arrangements to hear it. All right. So we hear the first case. It's U.S. v. Coskun, and we'll hear first from Ms. Hutsman.  Erdinc Coskun is a native of Turkey whose primary language is not English, who was tried, testified, and was ultimately convicted by a jury without the assistance of a court interpreter, despite his request for one. Okay. So I'm actually really interested in figuring out what you think is the right standard to judge this kind of thing, because we know there are a lot of people for whom English is a second language who nonetheless are quite fluent, perhaps even more fluent than those of us who only speak English. So just because English is your second language to me isn't, and the statute's clear, that's not the end of the inquiry. We also, I totally understand the point that you can know enough English to maybe write, and that's different from speaking and comprehending and all, you know, I get all of that. But we also know that district courts have to be the one to kind of assess facts. Is somebody kind of malingering vis-a-vis their knowledge of English or not? So how is an appellate court to judge a district court's evaluation of that? Well, I think that is the issue before us. And it is, of course, specific to this case, but let me suggest some of these factors. First of all, the court basically concluded after a significant discussion with Mr. Koskin, who I think did at least a good job of expressing how he couldn't express himself by saying, I need time, I need deliberation, I'm better at using English in writing than orally, I have trouble with people speaking too quickly or simultaneously, there's certain pronunciations, certain ways of speaking I can't understand. Orally, I can't do this as well as I need to. So one thing you should be looking for as an appellate court is that level of information, which I've found in other cases, and I've looked at a lot of cases across the circuits, not just this circuit, I've never found that level of specific information about what the problem is with failure. I know what he said, but looking at it through the district court's eyes, we had a guy who spent seven years at Syracuse University. He'd been in the country 14 years. And just looking at the record, there appears to be very few instances where he indicated any problem understanding. His attorney never said, I have trouble communicating with him. I'd like to address all of that. Those are all part of the factors that this court needs to consider, and they're all here. But are we considering factors, or are we trying to decide if the district court's determination was clearly erroneous? The Tenth Circuit seems to indicate that that's what we're doing. And so that's a different prism than just straight-up abuse of discretion. So what is the prism by which we review the question? This is the prism that I believe this circuit has said you're looking at. We talk, like the court said, we agree with the government. It's an abuse of discretion standard. There's a clearly erroneous factual determination. That sort of thing is what you're used to. But the facts here that he determined were, one, you're intelligent, and two, you made some fairly sophisticated, if some would consider frivolous, arguments to me today. He didn't say, I don't believe you when you say you have problems when people are talking simultaneously. I don't believe you when you say that you can't understand certain things orally because of the pronunciation. I don't believe you when you say, I need time to express myself orally and time to understand what's said orally. So this is not a situation where you have hurdles of clearly erroneous findings? I don't think so. I'm not suggesting it's clearly erroneous to say that Mr. Koskin is intelligent. In fact, you concede he's intelligent. A lot of intelligent people don't speak English. True. And so I have no reason to believe he's not intelligent. I mean, he was fairly articulate in saying what his problems were with not being able to understand. How do you address the Syracuse University thing? Because to me, that is the biggest argument against you, because I think you can live in this country a long time and not speak English well. I think you can write English and not be able to comprehend it. All of that, I completely agree with you that that's all possible. But I think it's difficult to get around the idea that you're attending university, which is part oral, part written, and apparently doing okay. So how do you answer that? Well, we don't know that he was apparently doing okay. First of all, he came to the United States in 2000 to get a master's degree and learn English. He goes at some point to Syracuse University, and by 2007, he ended his studies. There's nothing in the record to suggest what he studied, how well he did there, whether he took one hour per semester or three hours every other semester. There's no evidence he got any degree of any sort. There's really no evidence what he did at Syracuse. But isn't that his burden to bring that forward, to say, look, I mean, while I attended Syracuse, I took, you know, all math classes or all classes that were online that I could, you know, keep watching over and over again or, you know, whatever, whatever. That would explain, as opposed to what we all think of as a traditional college class where you have a professor talking sometimes very quickly and you're comprehending and doing well. Well, I had, you know, would prefer that he had talked more about his stay in Syracuse. I thought we do know what he studied. I thought he almost obtained his master's degree in telecommunication and network management. He said at some point, and I think this was the probation officer that he studied. I think that's in the pre-sentence report. He said he studied telecommunications and networking management. I have, I saw nowhere where he said or it's verified that he almost completed. Well, according to the transcript of the immigration proceedings, he is two classes short of obtaining his master's degree. That, and that is in the record through the AFOL, Your Honor. Okay. Well, I think that's, that's some, puts some meat on the bones to what we. It does. And there's no question that, I mean, it's meat on the bones, but it took seven years. And, you know, that to me would present a red flag. Yes, sir. I think it was the record. I mean, he testified, and there's no indication from the record that he had any difficulty understanding the questions or was unresponsive to the questions because he didn't understand. And the only remark he made during the trial, or just about the only remark, was, I don't understand the rules. You know, he spoke up out of turn, but mostly to say, I don't understand the rules. You know, he wanted to object, and the judge had to tell him, no, that's for your lawyer to do. But I saw very little, if anything, in the record that indicated he didn't understand what was going on. Well, first of all, I think the fact that he didn't understand the rules is significant under the Court Interpreters Act because the question is, does the fact that his language is primarily not English inhibit his ability to understand the proceedings? Well, there are not many defendants who understand the hearsay exceptions or when the objections have to be made or the form of the objections. I mean, I don't agree with that. But you at least have to be able to discuss these things with them orally. I mean, as someone who's represented people for whom English is a second language, I've found when I've gone to the jail and I sit down and, you know, they say, wait, I can speak English, and I start talking about due process or procedure or indictments or burden of proof, their eyes glaze over. But we see nothing from the lawyer complaining about that. He didn't complain, but he also didn't dispute what Mr. Koskin said. Well, he was silent, I mean. He was silent. He was silent through most of the trial. He didn't even file for Rule 29 motion. So I'm not sure that that tells us a whole lot about the validity of Mr. Koskin. You know, he ought to be doing something there. You know, it seems like if there was anything, if the guy couldn't understand what was going on, the lawyer would be his place to reinforce that. You would think he would. And the only time we hear from the lawyer at all is at sentencing, where he essentially admits that he doesn't understand things. Right. So the lawyer says he didn't understand. So I think that's a very good fact for you, that the lawyer later says, he didn't understand. He later says it, yes. And that's a good fact in the record for you. Can we back up to the legal standard? Do you have to show that there's some prejudice for this, or do you not need to show prejudice? Because it appears that the stay from his main point is the stay from the Second Circuit. We have the order where it's been vacant. There's no stay in effect. So he was legitimate for them to be. He doesn't have a legal argument as far as I can tell. And let me say, I agree with you, but it took me a long time to figure that out, which goes to sort of the issue of the complexity of the case, which I think is a factor in my favor as well, Mr. Koskin's favor. But I don't see how you have to prove prejudice when the question ultimately, according to the Fifth Circuit under Tapia, is whether the trial at the end of the day is fundamentally unfair. I mean, can't you have a fundamentally unfair trial even if there's sufficient evidence to support the conviction? So, I mean, I'm kind of back. I still don't feel like I have a clear understanding. If we're too articulate, so we have to have a measure by which we judge the district court's determination. So you said you were going to give us factors. I'm having trouble understanding what those factors are. You would have us as the legal standard by which we judge the findings that the district court made or didn't make. The question is, did English as second language inhibit his ability to understand the proceedings, to communicate with counsel in the court, and as a witness, to testify, to express himself? Judge Davis said he expressed himself. But if you look at the issue that I raised about the use of the word cordial, I mean, there's no way he was using that word properly. He even said with respect to his prison testimony, it was really cordial custody for them to keep me for 45 months when I'd never committed a crime. He's not using the word correctly. He's not using it. Other people use words incorrectly, lawyers and others. One word out of a whole testimony is not a whole lot. But it's evidence of the problem. He doesn't understand American words properly, English words. Well, you criticized the district court for not finding that the defendant was sort of lying when he said, I have trouble, you know, communicating orally and listening to people talk fast and that kind of thing. So if the district court had said, I don't believe you, you lack credibility, would that change this? Would you then not have appealed? I mean, is that what we're looking for for the district court to say, look, I just don't believe that you have that much trouble. Everybody has some trouble. Some people don't know what some legal terms mean and they only know English. We have a lot of people that are not very well educated who end up in court and the only language they know is English, but they don't know a lot of English big words in quotes. So the fact that somebody doesn't know what mitigation means, a lot of defendants who don't know any other language don't know what mitigation means. So my question is, is it the district court's lack of finding that affirmatively that he's not credible and can we imply that finding from the district court's ruling? I don't think you can imply the finding, but I think that is one of the things you look at. You have a trial. You don't have a bilingual attorney. You have someone who testified. There's no interpreter. This is not a plea. This is a trial. It's complex if for no other reason than because of his theory of defense with all of these courts and orders and requests for withdrawal of the mandate, et cetera, all those things you all know about, and you don't have clear evidence of the nature of what he learned at Syracuse in seven years. You don't have an attorney who says, Judge, he's lying, and you don't have a judge who says, I disagree with you. I think what you have is a judge who just took a simple way out, said, look, you know, you're smart. Muddle through it. And I don't think that's okay under our Constitution and under the court report, under the Court Interpreters Act. You have a best case for us. I've gone to the ALR of all these court reporting cases, I mean, all these interpreter cases. What's your best case? My best case is Tapia. Tapia. And it's not fully applicable, but, you know, they remanded and said, see if there was someone sitting next to him, an interpreter. The best case is I could find no case where somebody goes through a trial, says, I can't understand, expresses problems throughout, the attorney doesn't say he's lying, he's making this up, Judge, and he even testifies and gets convicted. I mean, it seems to me, if nothing else, when you add all of those factors together, you have maybe not a standard for every other case, but certainly a standard for this one that there was an abusive discretion in a fundamentally unfair trial that doesn't have to mean he would have been found not guilty. It's just not the way we should be doing things in the United States. Okay. Thank you, Ms. Arthur. Okay, Ms. Griffin. May it please the Court. In this case, Your Honors, Judge Drell did not, under either standard, either clearly erroneous or abusive discretion err when he decided that Mr. Koskin did not need an interpreter. And a review of the record demonstrates that, as required by the Court Reporter Act, Mr. Koskin did receive a fundamentally fair trial. What are the facts that we would have to find clearly erroneous to rule against you? I mean, intelligent, but I don't know that we would have to find that was clearly erroneous. I wish that Judge Drell had made his findings tied to the Court Reporter, I'm sorry, the Court Interpreter Act. He did not. But throughout the trial, he made numerous comments and findings. Specifically, even at the very first hearing, he told after the very first hearing lasted almost two hours, and Mr. Koskin was allowed to speak on his own behalf. Mr. Johnson, until they got to the motion to quash, which they held at the very end of the hearing, Mr. Koskin was allowed to speak for himself. And after seeing all of that and the abilities of Mr. Koskin in the courtroom and interacting with Mr. Koskin for quite a while, Judge Drell says, part of your problem is you don't want to listen. Part of your problem is you want to talk in hopes that you can delay this proceeding. So right there, we understand from Judge Drell that he believed that Koskin clearly understood what was going on in the courtroom and just was attempting to delay his proceeding. Now, Judge Drell did take a recess during this hearing, and he went in the back with Mr. Koskin's A file, and from that, he would be able to see that Mr. Koskin engaged in the exact same type of activities in his administrative law proceeding where he was provided with an interpreter. He refused to listen to the administrative law judge. He tried to take over. He tried to do things that he wanted to do, and it got so bad, I believe the issue was that Mr. Koskin had made a motion to have the administrative law judge recuse himself, and the judge denied the motion, and Mr. Koskin, at what was to be his final asylum hearing, just kept insisting, Judge, you can't hear this. Judge, you can't hear this. Judge, you can't hear this. And the administrative law judge says, Yeah, I denied your motion. I can hear it. I don't care that you have filed an appeal. I can hear it. And Mr. Koskin was so obstinate and so difficult that the judge finally deemed his asylum petition abandoned and ordered him deported. So Mr. Koskin's being a pain in the rear end in these proceedings is not new and was clearly reflected in his immigration file where he had an interpreter. And I would also like to point out, as his A file reflects, that when Mr. Koskin was provided with a Turkish interpreter, he still spoke English. And there are several instances in the A file where the administrative law judge chastises him and tells him, Mr. Koskin, you need to speak Turkish. You need to rely on the interpreter. And in spite of that, Mr. Koskin continued to speak English. And at one point, the ALJ responded. Why does he have to speak Turkish just because he has a Turkish interpreter helping him understand what other people are saying? I don't understand why that, the fact that he can speak English somewhat, I mean, that may be one of the factors. But I don't understand why he has to speak Turkish just because he has a Turkish interpreter. And I've seen proceedings where the person speaks in English but listens in Spanish because they want to be able to make sure they understand it better. And I don't know what the rules are in this administrative proceeding, Your Honor, and it could be that this particular judge had just been burned in the past on an appeal where an alien spoke a lot of English and then on appeal claimed that there was some communication problem. I don't particularly know. But I would point out that in response, one of the times the administrative law judge was speaking English, and I don't believe it was, I admit I haven't refreshed my memory on the transcript recently, but I don't believe that it was a very detailed or difficult to understand conversation. And Mr. Koskin feigned or said that he didn't understand, and the judges got very frustrated with him and said, look, you keep speaking to me in English, and when I try to respond to you in English, then you pretend you don't understand. So that's a... That's all with the administrative law judge. But that's... We don't have a pretend in the district court record. If we did that, this would be a much easier case probably. If the judge said, you're pretending, you're faking, and that would make the whole case quite simple under clearly erroneous. Absolutely. But he did say that I just think that you're trying to talk and talk and talk and try to delay these proceedings and prevent your inevitable... Immigration record before Judge Drell? It was, Your Honor. He asked the government to make it an exhibit in that pre-trial hearing, and it's a...I think it's over 2,000 pages, but it is in the record. Judge Drell also... I think, though, I mean, this is what I'm wondering. If the language that he spoke as his native language was Spanish, I'm guessing we wouldn't have this case because I'm guessing a Spanish interpreter is pretty easy to come by. The Western District of Louisiana maybe doesn't have as many Spanish-speaking defendants as other parts of the Fifth Circuit, but nonetheless, that's a common language that's not English spoken by people in this general region, maybe even French. I don't know. But, you know, a language that's very common. The problem, as I see it, is Judge Drell probably didn't know where he was going to find a Turkish interpreter quickly. And should that matter? Because I'm guessing if the language was Spanish and he had a Spanish interpreter sitting in the next room or down the street, he'd just call them up and get them down there and not have this issue because, as a judge, the last thing you want is some issue about whether somebody understood what was going on. But because it would be some kind of convoluted thing to go find an interpreter in this language, I'm guessing that in some degree drove it, and is that proper? I don't actually know that that's the case, Your Honor. I have had cases in Shreveport where we had great difficulty in finding a qualified Spanish interpreter, especially at the last minute, because there's one lady who does a lot of the interpreting both in Shreveport and Monroe and she is in high demand, as you might imagine. I think she's possibly the only certified court interpreter. Anyway, I think that what drove Judge Drell's decision is not necessarily the type of interpreter, although I concede I don't know. Let me just say the difficulty of getting an interpreter in any language, as opposed to there are courts where there is an interpreter on standby in certain languages. Do you think that factored in, and is that an appropriate factor, the difficulty of getting a Turkish interpreter? There's no indication in the record that it was, Your Honor. I think the judge was frustrated with what he perceived as Mr. Koskin's attempt to delay the proceeding, in line with his refusal to get on the airplane, refusal to walk in the airport without screaming, dragging out his immigration proceeding for over two years, refusing to cooperate with the ALJ. I think the judge was just very sensitive to the steps that Mr. Koskin's history indicated he had taken to delay his inevitable deportation. And I think if Mr. Koskin had stood up and said, you know, I'm sick and I need to go to the doctor, the judge would have had the same frustrations with the inability to go forward with trial that day, given Mr. Koskin's documented history. But wouldn't he have had to send him to the doctor unless he made a finding that he was faking it? Or gotten him some sort of medical attention? I mean, somebody can be a hard-to-get-along-with person and still suffer a heart attack or whatever. Absolutely. And maybe if his goal was to simply delay, that's what Mr. Koskin should have done, was to fake the heart attack. I've also had defendants do that, and opposing counsel. That's worrisome. I'm sorry. They probably had chest pains, but maybe the stress of the proceedings. But I think that Judge Drell was just attempting to proceed with the trial that day. He had the jury there. He had the parties there. I don't think that his inability to obtain easily a Turkish interpreter was the really driving force, because in such instances, either the court or the department or someone could have come up. I mean, I've needed Urdu interpreters and all kind of unique, not-in-Louisiana-type languages, and we have been able to come up with someone. So I think it was just the, well, here he goes again, trying to delay everything. Do you believe that prejudice plays a role in this analysis? Or do you agree with opposing counsel that whether or not he could have prevailed on the merits is irrelevant to this abuse of discretion determination? I think that he does have to show some form of prejudice, or that he received a fundamentally unfair trial. That doesn't mean that he has to show that he had a meritorious defense, does it? I think he has to show that he received a trial that was so fundamentally unfair. I'm sure this is not an appropriate analogy, but the thing that springs to mind is the execution of the mentally ill, where he does not understand what is happening to him and why it is happening to him. Do you have authority for this standard that you would suggest for us to use? I have not seen any case law that discussed whether or not, no, ma'am, I have not seen any case law. But I think he does have to show that he received a fundamentally unfair trial, at the very least, and this record does not demonstrate that he did. So, see, the relative lack of helpful opinions in this area, I mean, we have tapia and so on, but we don't have a whole lot that gives us guidance or district courts guidance, and that's why I'm particularly interested, obviously, in resolving the particular case, but also in providing some guidance or clarity or whatever you want to call it. So we've heard from your opponent as to what the factors, the considerations should be. What would you say? What should district courts do when faced with somebody saying, clearly he is a non-native English speaker, we know that's not fake. When you have a person like that who meets kind of the first prong of the statute, now we're looking at the second prong of whether that prevents them from understanding the proceeding. How should a district court evaluate that? What factors? What analysis? Whatever. Well, I think it's going to be very fact-intensive, and I don't know that it's easy to come up with a do 1, 2, 3, but I think in this case what is relevant is that the district court did have extensive interaction. I mean, this was an unusual case. The interaction was not between the district court and Mr. Johnson. It was directly between the district court and Mr. Koskin. And so the district court was able to, I mean, a lot of times you can just look at somebody and tell if they're comprehending what you're saying versus glazing over and have no idea. And the district court could also see and understand that Mr. Koskin's answers to his questions were appropriate under the circumstances. The court could look at the complexity of the underlying case. It was not at all complex. It was quite simple with Mr. Koskin just trying to obstruct the immigration agents or the deportation agents as they tried to get him into the airport and onto the plane. The judge could also, from his extensive interactions with Mr. Koskin, determine his sincerity and his truthfulness when he claimed that he could not understand the English language. He could listen to any concerns that Mr. Johnson may have raised, and Mr. Johnson's only concern that I recall him raising, at least during the trial, was that Mr. Koskin would not cooperate with him. And he said that while Mr. Koskin was on the stand. And I would also like to point that out, Your Honors, the judge really did try to determine from Mr. Koskin what are your problems, what is the issue in this case, and Mr. Koskin refused to cooperate with the judge. When the judge asked him when did you enter the United States, he wouldn't answer. When the judge asked him what's your education level, he wouldn't answer. The judge was trying to get answers from Mr. Koskin and was trying to make a reasoned decision in this case, and Mr. Koskin. He was trying to do it in English. But Mr. Koskin answered that answering those questions, answered the judge that answering those questions violated his right against self-incrimination and were irrelevant because he wasn't a lawyer. So he understood the questions, he just did not want to answer them, Your Honor. So yes, I agree, the questions were asked in English, but Mr. Koskin understood in English and refused to cooperate with Judge Drell. When Mr. Koskin was on the stand on direct, his lawyer asked him, what is your country of origin? And Mr. Koskin said, I don't want to answer that. And Judge Drell said, no, Mr. Koskin, you need to answer that, you need to answer any questions unless I tell you not to. And he said, well, I'm not going to, and what are you going to do about it basically? Something along those lines. Those aren't his exact words, but he said something along those lines. I'm not going to do it. So what about it? I'm not going to answer that question. He understood what he was being asked. He was just being difficult and did not want to cooperate with the proceedings. So the judge really, so you're asking me what does the judge, he didn't have an obligation to cooperate in the judge's determination. Mr. Koskin would not cooperate with the probation office. That is documented in the PSR. He refused to answer a lot of their questions. He would not provide them information about his family, his education, or his employment. He wanted to object to the entire PSR, saying that it was all false. It just, the record has got many examples where Mr. Koskin was given every opportunity to prove, you know, to demonstrate. Shouldn't the judge need to make affirmative findings? Look, you are just being difficult and obstreperous, and I don't believe you. I think this language thing, you're faking it. You know, kind of malingering vis-a-vis language, as I said it. Doesn't there need to be some express findings on that? Because, I mean, a lot of defendants are difficult, and they're still entitled to their rights. You know, I think this is the challenge of being a trial judge is humans are human, and not all of them are fun to deal with. So I don't find his being difficult a reason for him to be denied a right that he would otherwise be entitled to. So if that leads to the district court saying, look, I think this Turkish thing is yet another example of your trying to delay, et cetera, et cetera, and therefore I find that you're not credible in what you're saying. It seems like he says, well, I think you want to delay or whatever, but he doesn't say you're not credible in saying, yeah, I understand English when it's spoken slowly and clearly and all of that, but not when people talk fast and use big words and whatever. That's the essence of what he's saying. He's not saying he doesn't speak any English. And did the district court ever find that not credible? I think that is implicit in its rulings, although I agree fully that I wish the district court had explicitly said that. It did come up at sentencing where the judge explicitly said that Mr. Cosken had lost his credibility, had no credibility or something along that lines. But that was in context of sentencing. The judge did not make any such explicit finding at the trial or in the pre-trial hearing. And as one of you said earlier, we probably wouldn't have been here had he done so. But I think that is implicit in everything. So is that kind of the bottom line going forward is that district courts ought to make, whatever we do with this case, that district courts ought to make explicit findings of, if a defendant in the first hearing, because this is unlike other cases where it was down the road, says I need an interpreter, I don't understand, that the district court should make explicit findings about whether that's true or not at that stage or give him the interpreter? I think that it would be extremely helpful, obviously, for the district court to make such findings. And I think it would have been equally helpful had the USA asked the district court to have made such findings. Would you agree that if it is true what he said, in other words, that, yeah, he can read and write pretty well in English and when people speak slowly and use simple words he can follow, but that he has difficulty in the, like the discussion we're having now where I'm talking pretty fast and you're kind of responding and whatever, that that would be hard for him to follow? If that were true, would he be entitled to an interpreter? An interpreter or an instruction from the court that everyone should speak slowly, clearly, and succinctly. I have had that happen before, too, where you've had witnesses with hearing problems or other difficulties and everyone is just told, even when you have an interpreter, you have to speak extremely slowly so that the interpreter can interpret, and if that would have solved it, just speaking slowly and everyone speaking one person at a time and not on top of each other, then that could have solved it. They didn't do that. What I'm saying is if the court, if it were true that he needs some kind of accommodation, be it an interpreter or be it everybody speaking slowly, whatever it is, if that's truthful, that he's not just malingering or whatever the right word is, faking it, then was his trial fundamentally unfair if he didn't get that? I don't think so, Your Honor, because the question under the Court Reporter Act is, does he speak only or primarily in a language other than English so as to inhibit his comprehension of the proceedings? And I just don't see that in this case he didn't comprehend the proceedings. I don't see that he received a fundamentally unfair trial. As I said, he spoke clearly back and forth with Judge Strel. His attorney never complained that he was unable to understand him, and I just think that in this case, on the facts of this case, that Mr. Koskin did receive a fundamentally fair trial. And while the judge may have articulated it more clearly, I think that he did make the requisite findings that Mr. Koskin was just malingering and trying to avoid his deportation, as was supported by, as I said, the A file and his actions at the airport twice trying to obstruct his deportation. Okay. Thank you, ma'am. Thank you, Your Honor. Okay, Ms. House, back to you. I agree. You don't have a lot of guidance from the case law, except for the absence of any case like this where someone went through trial, specifically in advance of the beginning of trial, not on appeal, requested an interpreter, made a very pointed reason why. Was that on the morning of trial when he made that request? On the morning of trial. Nothing in advance. Nothing was filed in advance by him. Of course, he was appointed by, he was represented by counsel. It would have been inappropriate for him to file something at that time. Was it the first court presentation? Other than the arraignment, where apparently there was no translator. I don't have a copy of what happened at the arraignment, but there's no indication of a translator there. Was there some indication that he made some filings with the judge earlier in the case? He certainly made some filings with the judge later in the case. I specifically recall one. And when you read the filing, because we don't have all of the filings that he made in all the circuits, although he did say that he had help from detainees. I think it's important to acknowledge that, and that he took hours and hours and days and days to do that work. But he did, even in the filing that's in this record, you can tell he doesn't use words properly all the time. I mean, intelligence can only go so far. No, I don't think the intelligence thing, I mean, I don't get any more or less intelligent when I go to a foreign country, but it doesn't mean I can speak their language. Well, having studied French, I live in fear that I would go to France and they would make me go to trial without an interpreter, because I can't hear either. I can read better. I'm not even that good. But the point is, this is such an unusual case because I think normally you just get an interpreter when the issue is raised, whether it's by the lawyer or by the client. Yeah, but the case law doesn't require that. Just raise the issue and you get an interpreter. No, but it says inhibit. Not inhibit a lot. Inhibit communication, understanding. And I don't think that the court's ruling in any way said I do not believe you when you say all those things about why you need an interpreter. What do you say, what's the effect of the history, though, that the judge knew about this guy, assuming that he knew something about the immigration hearing and the fact this guy had been ordered deported and went kicking and screaming to the airplane and wouldn't get on and did everything he could to slow things down? Well, he knew that he went kicking and screaming eventually, but it's not clear from the record how much he knew of what was in that A file. He certainly didn't say, I base my ruling on the fact that, you know, you spoke English even when you had an interpreter in the immigration. I mean, it wasn't in the record, though, at the time. There's certainly a level of frustration that Mr. Koskin created with the judge and probably others he's dealt with. But was it in the record? He made the determination and then he had the lawyer put it into the record. Isn't that right? That's right. So it wasn't in the record yet. And there's just no reference to it. Is that wrong on that? That's right. The lawyer said, I have his A file. Yes, he did have an interpreter during the immigration proceedings, but what the lawyer said is he's filed so many things in English, and that's when Mr. Koskin said, yeah, when I have days and days and weeks and weeks to work on it and testify later with the help of detainees. With regard to the counsel's responsibility, are there guidelines for when you need to request an interpreter and is one of the factors whether or not you've used an interpreter in prior proceedings? I'm just curious as to what the policy, how that works in the defense lawyers. I will say as the head of my office, I would have expected my, if this had been our case, I would have expected the attorney to ask for an interpreter just to go see the client and would have approved that expenditure. I mean, I know this isn't an ineffective assistance of counsel claim, but in my practice in twenty plus years of being the federal defender, we err in favor of getting an interpreter so that we're not dealing with this problem now or later or if he were still here in a 2255 or whatever. It's just the thing to do. Thank you. Okay, thank you very much. Thank you, counsel. We have your case.